Case 1:23-cv-00060 Document 15 Filed on 02/14/24 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
February 14, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANN MOLINA, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 1:23-cv-60 |
| § | | |
| MARTIN O'MALLEY, § | | |
| *Acting Commissioner of Social Security*, § | | |
| Defendant. § | | |

## REPORT AND RECOMMENDATION AFFIRMING COMMISSIONER'S DENIAL OF SOCIAL SECURITY BENEFITS

### I. Synopsis

Plaintiff Ann Francis Molina ("Molina") seeks judicial review of the decision denying her claims for social security disability insurance ("SSDI") under *Title II of the Social Security Act, 42 U.S.C. §421* and supplemental security income benefits ("SSI") under *Title XVI of the Social Security Act, 42 U.S.C. §§ 1318 – 1383.* At issue is whether new medical opinions presented by Molina were properly addressed by the Administrative Law Judge ("ALJ") and the Appeals Council ("AC"). Molina requests the disability determination of the Social Security Administration be reversed. Molina argues that substantial evidence does not support the ALJ's decision, because new, material medical opinions contradict the decision. Molina alleges neither the ALJ nor the Appeals Council properly addressed their lack of consideration of this alleged new, material evidence.

After review of the parties' briefing, the record, and the relevant law, the Magistrate Judge RECOMMENDS that the final decision of the Social Security Administration denying benefits to Molina be AFFIRMED.

### II. Background

#### a. Jurisdiction

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") for claims under Title II (Social

Security) of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §1383(c) to review a final decision of the Commissioner of Social Security for claims under Title XVI (Supplemental Security Income) of the Social Security Act. Venue is appropriate because Molina resides in Cameron County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

### b. Procedural History

On January 6, 2021, Molina applied to receive both Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"), claiming a disability effective date of July 10, 2019. Dkt. No. 7-1, pp. 257-236, 264-269.[1] Molina's claims were initially denied by the Social Security Administration on May 5, 2021. Dkt. No. 7-1, p. 164. On June 28, 2021, Molina filed a request for reconsideration of her claims. Dkt. No. 7-1, p. 172. Both claims were reconsidered and subsequently denied. Dkt. No. 7-1, pp. 175, 178. On March 11, 2022, Molina then filed a request for a hearing before an Administrative Law Judge. Dkt. No. 7-1, p. 182. The agency granted the request and set the hearing for August 23, 2022. Dkt. No. 7-1, p. 250. At the oral hearing before ALJ Kerber, Molina elected to represent herself, and she gave substantive testimony as to the nature of her disability. Dkt. No. 7-1, pp. 98 – 120. In addition to Molina's own testimony, ALJ Kerber heard from vocational expert, ("VE"), Crystal Younger. Dkt. No. 7-1, pp. 121 – 125. Younger answered hypothetical questions regarding the availability and applicability of jobs in the national economy in relation to an individual's functional limitations. *Id.* On September 28, 2022, the ALJ sent notice of their decision, finding Molina ineligible to receive SSDI, SSI, or both SSDI and SSI. Dkt. No 7-1, pp. 59 – 61. Consequently, Molina sought timely review of the ALJ's decision with the Appeals Council. Dkt. No. 7-1, p. 259. At the Appeals Council level, Molina was represented by legal counsel. *Id.* Molina included an additional 66 pages of records with her request to the Appeals Council for review of the ALJ's decision. Dkt. No. 7-1, p. 6. The Appeals Council ultimately found no basis for review. Dkt. No. 7-1, p. 1. Now, Molina seeks review of the Commissioner's

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

final decision denying social security benefits with this Court. Dkt. No. 1.

### c. Factual Context

Ms. Ann Molina was born in 1982 and was 38 years old at the time of her initial applications to the Social Security Administration. Dkt. No. 7-1, 257-263. Her educational attainment is at the 11th grade level of high school, and she has not completed any type of specialized job training, trade, or vocational schooling. *Id.* at 293. Her employment history evidences relevant full-time work experience as grocery store attendant for nine years and providing medical assistance to others from January 2018 to March 2019. *Id.* Molina is claiming her current physical disability status stems from her involvement in a motor vehicle accident in July 2019. Dkt. No. 11, pg. 3.

ALJ Kerber found that Molina suffered from multiple physical disabilities including "degenerative disc disease of the lumbar spine, type 2 diabetes mellitus, asthma, obstructive sleep apnea, and obesity." Dkt. No. 7-1, p. 65.  Molina makes no claims in relation to mental disability or mental health disorders. ALJ Kerber declined to consider additional written evidence submitted after the August 23, 2022 hearing, because the submission failed to conform to the requirements of 20 C.F.R. §§ 404.935(b) and 416.1435(b) which require submission at least five business days before the scheduled hearing date. However, the ALJ did, on their own accord, request additional medical evidence from two of Molina's treating professionals. Dkt. No. 7-1, p. 63. The medical evidence garnered from these requests was ultimately not independently admitted into record evidence, because it was determined to be a "duplicate of examination notes already contained within Exhibit 4F." *Id.* Molina provided additional evidence to the Appeals Council which they declined to consider. Dkt. No. 7-1, p. 2. The newly provided evidence largely concerns the treatment and imaging of Molina's left shoulder, knees, hips, and lumbar spine. Dkt. No. 7-1, pp. 79-97.

### d. Molina's Medical History

#### i. Physical Therapy for Left Shoulder and Right Hip Rehabilitation

On July 10, 2019, Ann Molina was involved in a motor vehicle accident that necessitated her consulting medical professionals for treatment of injuries caused by the

accident to determine any related impairments or exacerbation of underlying physical conditions. Dkt. No. 11, p. 3. She received outpatient physical therapy to manage lower back pain for the accident-related injuries/exacerbations. *Id.* at 4.

In August 2019, Molina received an initial MRI of the lumbar spine which found, "no evidence of fracture, dislocation, bone bruise, or bone contusion." Dkt. No. 7-1, p. 93.

In June 2020, her physical therapy treatment plan underwent reevaluation, noting that Molina "responded well to treatment and RE without adverse effects." Dkt. No. 7-1, 391-393.

On October 27, 2020, Molina's left shoulder underwent X-ray imaging which found a clinical impression of the area as exhibiting "no acute osseous abnormality" and "no sclerotic or destructive changes." Dkt. No. 7-1, p. 96.

In November 2020, Molina was referred back to Total Rehab for physical therapy related to functional limitations in her left shoulder. Dkt. No. 7-1, p. 449. The left shoulder treatment plan recommended twice weekly visits for six weeks or twelve visits within 90 days. *Id.* at 455. Molina began her physical therapy treatment plan in December 2020 until it was eventually discontinued in early March 2021. Dkt. No. 7-1, p. 457-516.

In January 2021, Molina contacted Dr. Juan M. Garcia's office to seeking continuance of physical therapy, specifically in relation to rehabilitation of her right hip. Dkt. No. 7-1, p. 382. In March 2021, physical therapy for the right hip pain was prescribed and conducted. Dkt. No. 7-1, pps. 504-512.

### ii. Treatment of the Lower Extremities

On January 20, 2020, Molina's right knee underwent X-ray imaging which found a clinical impression of the medical compartment as exhibiting "mild to moderate arthritic changes." Dkt. No. 7-1, p. 89.

On April 21, 2021, Molina complained to Dr. Juan Garcia of right low back pain radiating into her leg. Dkt. No. 7-1, p. 638. For further clinical diagnosis, Dr. Garcia ordered x-rays of Molina's spine and both hips. *Id.* at 642. On April 28, 2021, the X-rays were reviewed, showing mild degenerative disc disease of the spine and hips. Dkt. No 7-1, p. 645. That same day, magnetic resonance imagining ("MRI") of the lumbar spine was

ordered to assess the extent of any lumbar deterioration. *Id.* at 650. Molina's medical records do not indicate this MRI order was filled.

On August 31, 2021, Molina again visited Dr. Juan Garcia's office. She was seen by Jesus Garza whose care plan notes to "send MRI by chronic back pain, muscle spasm." Dkt. No 7-1, p. 651-655.

On November 11, 2020, Molina sought treatment for "calluses on heels" through Dr. Gladys Bembo, a podiatry specialist physician. Dkt. No. 7-1, pps. 512 – 516. Dr. Bembo found Molina's feet each had blood blisters warranting removal. *Id.* at 515.

On November 24, 2020, Molina again visited Dr. Bembo who removed one of the previously identified blood blisters. Dkt. No. 7-1, p. 519.

On February 23, 2021, Dr. Bembo assessed Molina for changes to the skin of her heels and lower extremity edema relating to the symptoms of Type 2 diabetes mellitus. Dkt. No. 7-1, p. 521. The treatment protocol consisted of a foot lotion and continued monitoring. *Id.*

A year later, in February 2022, Molina sought treatment from Dr. Surya Raguthu for lower back pain radiating to her legs resulting in numbness and weakness. Dkt. No. 7-1, p. 614. In this evaluation, Dr. Raguthu noted Molina as positive for self-reported muscular and back pain but negative for bone pain. *Id.* MRIs of the lumbar spine and left shoulder were again recommended. *Id.* at 615. In March 2022, an MRI of Molina's lumbar spine was conducted on Dr. Raguthu's order. Dkt. No. 7-1, p. 95.

On April 6, 2022, Molina followed up with Dr. Raguthu for pain management treatment. Dkt. No 7-1, p. 563. Treatment based on the second MRI results consisted of a topical gel to be applied at home and in-office injections should the pain persist. Dkt. No. 7-1, p. 565.

   e. **Disability Evaluations**

Two state agency consultants, Dr. Craig Billinghurst and Dr. Paul Sporn, reviewed Molina's medical records regarding her physical abilities as part of the disability process. Several treating healthcare professionals also contributed significantly to Molina's submitted medical history. However, Molina's appeal is premised on new, material

medical evidence from three treating sources: Dr. Juan M. Garcia, Nurse Practitioner ("NP") Santiago Ramos, and Dr. Surya Raguthu. All evaluations are meant to be considered by the ALJ and given significance on the basis of supportability, consistency, relationship with the claimant, and other factors like familiarity with other evidence or understanding of disability policies. 20 C.F.R. §404.1520c(a), (c)(1)-(5).

### i. Dr. Craig Billinghurst, M.D.

On April 28, 2021, Dr. Craig Billinghurst, a state agency medical consultant, reviewed Molina's medical records. Dkt. No 7-1, pp. 126-147. Ultimately, Dr. Billinghurst found that Molina was capable of light exertional work. *Id.* His assessment also determined that Molina had cognizable diagnoses of asthma, Type 2 diabetes mellitus, and severe dislocations of all types. *Id.* at 130. Based on the limited record available to Dr. Billinghurst at the time of his assessment, the ALJ found his opinion unpersuasive in the overall evaluation of Molina's impairment. Dkt. No. 7-1, p. 71.

### ii. Dr. Paul Sporn, M.D.

On November 8, 2021, Dr. Paul Sporn, a state agency medical consultant, reviewed Molina's medical records. Dkt. No 7-1, pps. 150-162. Dr. Sporn found Molina capable of performing a light range of work with some postural and environmental limitations. *Id.* No manipulative limitations were adopted by Dr. Sporn. *Id.* The ALJ found Dr. Sporn's opinion somewhat persuasive, especially given that more record evidence was available for review at the time of his evaluation. Dkt. No. 7-1, pg. 71. The ALJ found that the nonexertional postural and environmental limitations opined by Dr. Sporn are generally reasonable to protect against additional exacerbation of the claimant's symptoms relating to both severe and nonsevere impairments. Dkt. No. 7-1, p. 72.

## III. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching this decision. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360

(5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court's role in applying the substantial evidence standard is limited to making findings on the actions of the ALJ; it is not to "reweigh the evidence in the record, not try the issues *de novo*, nor substitute [the Court's] judgment for that of the [Commissioner's]. *Johnson v. Bowen*, 864 f.2d 340, 343. The decision by the ALJ must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The Appeals Council may only accept review based on a claimant's submission of additional evidence if it determines that the evidence in question is: (1) new; (2) material; (3) relates to the period on or before the ALJ's decision; and (4) creates a reasonable probability that it would change the outcome of the decision. *See* C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5). "[T]he record before the Appeals Council constitutes part of the record upon which the final decision is based." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Thus, if a claimant submits new evidence to the Appeals Council, that evidence is part of the total record before the Court. *Id*. The Court "must examine all of the evidence, including the new evidence submitted to the [Appeals Council], and determine whether the Commissioner's final decision to deny Sun's claim was supported by substantial evidence." *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015).

"When a claimant submits new evidence to the Appeals Council, the Council must consider the evidence if it is new and material and if it relates to the period on or before the ALJ's decision." *Hardman v. Colvin*, 820 F.3d 142, 150 (5th Cir. 2016) (internal quotation marks omitted).

The Court must consider whether the new evidence "dilute[s] the record to the point that the ALJ's ultimate finding is insufficiently supported." *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 282 (5th Cir. 2006). "[E]ven when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Hardman*, 820 F.3d at 151 (quoting *Sun*, 793 F.3d at 511-12). The Fifth Circuit has rejected arguments that the Appeals Council must provide a thorough and detailed explanation of the weight given to the newly submitted evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 n.1 (5th Cir. 2005).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (Procedural perfection in administrative proceedings is not required). The Court will not reverse a judgment unless the substantial rights of a party have been affected. *Id*. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

Before examining the specifics of the ALJ's decision in Molina's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## Disability Determination Process

A plaintiff is not entitled to benefits under Titles II and XVI of the Social Security Act unless they are disabled as defined by the Act. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983). The law and implementing regulations governing benefits under both Titles, broadly known as SSDI and SSI, are consistent with one another. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); Greenspan *v. Shalala,* 38 F. 3d 232, 236 (5th Cir. 1994). Disability is defined as the inability to engage in any substantial gainful activity by reason of any *medically determinable* physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *Id.* (emphasis added).

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled for purposes of the Social Security Act, 42 U.S.C.S. §1381. This burden is satisfied if the claimant demonstrates a physical or mental impairment lasting at least twelve months that precludes that person from pursuing any substantial gainful activity. 42 U.S.C. §§ 4223(d)(1)(A), 1382c(a)(3)(A). Once the claimant satisfies the initial burden, it is then the responsibility of the administrative law judge to utilize a five-step sequential process to determine whether the claimant is capable of performing substantial gainful activity. This process is set forth in 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f).

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. § 404.1520; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step except for step five, which contains a shifting burden. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any stage the claimant fails to make the required showing, the evaluation process stops and the claimant is determined to not be disabled. *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988).

The Commissioner utilizes an inquiry-based approach to determine an adult claimant's disability status.[2] The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

### Step One

At step one of the inquiry, the claimant must show that they are not currently engaged in "substantial gainful activity," defined as activity "done (or intended) for pay or profit" that involves "doing significant and productive physical or mental duties." 20 C.F.R. § 404.1520(a)(4)(i), 20 C.F.R. §404.1510. A finding of no substantial gainful activity allows the inquiry to proceed to step two.

### Step Two

---

[2] (1) Is the claimant currently working? (2) Does the claimant have a medically severe impairment? (3) Does the impairment meet or equal an Appendix 1 listing for presumptive disability? (4) Does the impairment prevent the claimant from performing past relevant work? (5) Does the impairment prevent the claimant from performing any other work? 20 C.F.R. §§ 404.1520, 416.920.

In step two, the claimant is required to demonstrate a medically severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which significantly limits [the] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted or be expected to last for at least 12 months. 20 C.F.R. § 404.1509.

### Step Three

The third step in the sequential evaluation process involves the application of the Social Security Administration's Listing of Impairments located at 20 C.F.R. Part 404 Subpart P Appx. 1. The claimant demonstrating a "listed impairment" or impairment equivalent to a listed impairment will be considered disabled without consideration of additional factors. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment or its equivalent the process continues to step four. 20 C.F.R. § 404.1520(e). Movement from step three to step four requires the Commissioner to assess the residual functional capacity (RFC) of the claimant, accounting for the physical and mental limitation substantiated in the record. 20 C.F.R. § 404.1520(a)(4), 20 C.F.R. §404.1545(a)(1). The RFC determination is then used for further evaluation in step four of the inquiry.

### Step Four

Arriving at step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

Residual functional capacity ("RFC") "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, causing physical or mental limitations or restrictions that may affect their capacity to do work-related physical and mental activities." *Irby v. Barnhart*,

180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).[3]

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 C.F.R. § 404.1529(a); *Herrera v. Commissioner of Social Sec.*, 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." *Salgado v. Astrue*, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). The ALJ proceeds to the second step only if the claimant is found to have a medically determinable impairment capable of causing the alleged symptoms. *Winget v. Astrue*, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, a claimant will not receive a positive disability determination if their impairment would not objectively and reasonably cause the reported symptoms. On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom.

The second step is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on a person's ability to do basic work activities. SSR 96-7p. In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the

---

[3] "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. *Id.*

The ALJ also considers treatment other than medication that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. *Id.*

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform her prior relevant work, the process moves to step five.

### Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); *Masterson*, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show that the claimant can perform other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. *Id.*

### IV.    The ALJ's decision

As a threshold matter, the ALJ found that Molina met the insured status requirements of the Social Security Act through December 31, 2024. Dkt. No. 7-1, p. 65.

In step one, the ALJ found that Molina had not engaged in substantial gainful activity since July 10, 2019, the alleged date of onset. Dkt. No. 7-1, p. 65.

In step two, the ALJ found that Molina suffered from degenerative disc disease of the lumbar spine, type 2 diabetes mellitus, asthma, obstructive sleep apnea, and obesity. Dkt. No. 7-1, p. 65.

In step three, the ALJ found that Molina did not have an impairment or combination of impairments that met equals the severity of one of the listed impairments, moving the process to step four. Dkt. No. 7-1, p. 67.

In step four, the ALJ found that Molina had the residual functional capacity ("RFC") to perform sedentary work. Dkt. No. 7-1, p. 68. The ALJ did also note that Molina was limited to: "never climb ladders, ropes or scaffolds; only occasionally balance, stoop, kneel, crouch, and crawl; no exposure to workplace hazards such as dangerous machinery and unprotected heights; no exposure to respiratory irritants such as extreme cold, extreme heat, humidity, and concentrated fumes, odors, dusts, and gases; and no overhead reaching with the left (non-dominant) upper extremity." *Id.*

As to Molina's physical limitations, the ALJ found the opinions from the State agency consultants to be "unpersuasive" (Billinghurst) and "somewhat persuasive," (Sporn) noting that the complete medical record supported a finding of greater disability than was assessed by the consultants. Dkt. No. 7-1, pp. 71-72. The ALJ found that Molina's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." Dkt. No. 7-1, p. 69.

The ALJ found that Molina was unable to perform her past relevant work experience as either a Nurse Assistant or Hand Packer. Dkt. No. 7-1, p. 72.

Based upon the testimony of the vocational expert, in step five of the analysis, the ALJ found that there were a sufficient number of jobs in the national economy that Molina could still perform. Dkt. No. 7-1, p. 73.

Based upon Molina's RFC and her ability to still perform certain work, the ALJ concluded that Molina was not disabled. Dkt. No. 7-1, p. 74.

Regarding the ALJ's consideration of new, material evidence, in her hearing

testimony on August 28, 2022, Molina mentioned an August 16, 2022, visit to Medwin Family Medicine and Rehab. To the ALJ, Molina reported she was told there was arthritis in her back which required injection treatments. Dkt. No. 7-1, p. 105-106. Molina further reported no additional diagnoses or diagnostic testing were given. *Id.* The ALJ declined to request the related treatment records, determining that this recent medical appointment did not involve a new condition or diagnostic testing. Dkt. No. 7-1, p. 67.

On August 24, 2022, after the hearing, the ALJ requested evidence from two medical sources, Yu Tang James Su and Surya P. Raguthu of Medwin Family Medicine and Rehab. Dkt. No. 7-1, p. 67. The information received from Yu Tang James Su was found to be duplicative of evidence already contained within Exhibit 4F and was not admitted into evidence by the ALJ. *Id.* No information additional from Surya P. Raguthu was received by ALJ. *Id.* The ALJ noted Surya P. Raguthu is related to Medwin Family Medicine and Rehab. *Id.* The ALJ found sufficient evidence within the record to make a decision without the additional evidence from Raguthu or Medwin. *Id.*

V.   **The AC's Decision**

In Molina's appeal to the Appeals Council, she submitted three new pieces of new evidence: (1) Ace Pain Management Rehab and Physical Therapy records dated February 2, 2022; (2) LV Imaging records dated August 23, 2019, through December 29, 2021; (3) Juan Garcia, M.D. and Nurse Practitioner Santiago Ramos records dated February 2, 2022, through January 27, 2023, and February 7, 2023. Dkt. No. 7-1, p. 2.

Ace Pain Management Rehab and Physical Therapy notes are from Dr. Surya Raguthu who recommend a physical therapy treatment plan of 12 sessions. Dkt. No. 7-1, pp. 79-84. The LV Imaging documentation contains ultrasounds, X-rays, and MRI's of Molina's alleged impairments sites. Dkt. No. 7-1, pp. 85-97. The notes of Juan Garcia M.D. include the medical opinion of Nurse Practitioner Santiago Ramos, and a check-box questionnaire completed by Dr. Garcia. Dkt. No. 7-1, pp. 7-53.

In rejecting Molina's appeal, the Appeals Council held that the additional evidence "does not show a reasonable probability that it would change the outcome of the decision" and "did not exhibit this evidence." Dkt. No. 7-1, p.2.

## VI. Analysis

Molina raises one primary argument on appeal: that substantial evidence cannot support the ALJ's decision because new, material medical opinions contradict the decision, and neither the ALJ nor the Appeals Council ("AC") sufficiently addressed this evidence.[4] Dkt. No. 11, p. 1. Ultimately, Molina's remaining claim fails, because the evidence submitted does not act to supplant or dilute the record evidence properly before the ALJ, and the AC properly denied review of the additional evidence.

The Court finds the ALJ provided a thorough review of the record evidence, adequately explained her findings, and referenced substantial evidence throughout her decision. *See generally* Dkt. No. 7-1, pp. 62-74. Plaintiff Molina has failed to show that no credible evidence supports the Commissioner's decision. The Court's review of record supports the ALJ's determination that "there is sufficient evidence already in the file to make a decision with additional evidence needed from Surya P. Raguthu or Medwin Family Medicine and Rehab" and that some of the additional evidence was duplicative of notes contained elsewhere in the record. Dkt. No. 7-1, p. 63. The ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ's decision is a fair summary and characterization of the medical records, including those records of treating physicians who had the benefit of reviewing the documentation later submitted to the AC. The ALJ also clearly articulates her attempts to obtain and review additional evidence despite the closure of statutory window for evidentiary submission. Dkt. No. 7-1, p. 63.

Molina submitted three pieces of new evidence to the Appeals Council: (1) LV imaging evidence (2) the check-box medical opinion of Dr. Juan Garcia which included additional forms from Nurse Practitioner Ramos, and (3) further medical records from Dr.

---

[4] In her Original Complaint, Molina claimed the "ALJ failed to follow the *de minimus* standard for determining Ms. Molina's impairments are non-severe at step two" which impacted the later steps of the sequential analysis. Dkt. No. 1, p. 2. Molina also claimed the "ALJ included manipulative limitations in the residual functional capacity ... but failed to obtain a reasonable explanation for inconsistencies between the VE's testimony and the descriptions contained within the Dictionary of Occupational Titles." *Id.* Molina's memorandum briefing in support of her complaint does not address these claims. Dkt. No. 11.

Raguthu (Ace Pain Management Rehab and Physical Therapy). The Court will address each of these in turn.

### a. LV Imaging Evidence

Molina argues that both the ALJ and AC failed to consider the imaging contained in this submission, specifically the new and material MRI evidence. Dkt. No. 14. p. 2. However, the ALJ relied on the notes of Molina's treating medical professionals who themselves had access to the same MRI findings. Dkt. No. 7-1, p. 694-702 (Notes of visit to NP Ramos for review of MRI results). Moreover, the submitted evidence shows Molina's treating medical professionals to be familiar with the MRI findings evidenced by chart notes including language stating "let her [Molina] know that her MRI haven't changed with the past imagines [*sic*]." Dkt. No. 7-1, p. 697. The ALJ found that Molina did suffer from degenerative disc disease of the lumbar spine and relied upon admitted record evidence of lumbar spine x-rays to make this determination. Dkt. No. 7-1, pp. 65, 69.

The LV imaging evidence does not meaningfully call into question the ALJ's conclusions. While the LV Imaging evidence covers the relevant time period and is material to consideration of Molina's health record, the ALJ points to other record evidence to support a finding of degenerative disc disease resulting in severe impairment. Dkt. No. 7-1, pp. 69, 73-74. Further, the ALJ accommodates for any functional limitations noted in the MRIs of the lumbar spine by partially rejecting recommendations of the State Agency Consultants, and instead, adopting more restrictive environmental limitations and an additional manipulative limitation. Dkt. No. 7-1, p. 72. The ALJ was required to rely on substantial evidence. The Court finds substantial evidence existed in the record before the ALJ and was appropriately cited in the ALJ's analysis. Reference to the LV Imaging evidence was contained in record before the ALJ as evidenced by the MRI review of Molina's treating professionals. Therefore, the ALJ's conclusions are supported by substantial evidence and apply the correct legal standards.

### b. Check-box Medical Opinion of Dr. Juan Garcia

The February 7, 2023, medical source statement of Dr. Juan Garcia was submitted

solely to the Appeals Council as it post-dates the administrative decision of the ALJ. Dkt. No. 7-1, p. 53. Molina contends that this statement should have been considered by the AC as it is both material and well-supported. Dkt. No. 11, pp. 19-21. However, Molina does not address the lack of explanation or detail present in the medical statement. While true that Dr. Garcia's statement is responsive to the presented questions, the statement consists solely of a check-box form. Dkt. No. 7-1, p. 53. This check-box form does not include any objective medical evidence in support of its conclusions. *Id.* This type of non-narrative form and clinically empty statement is generally viewed with disfavor among the federal courts of appeals and district courts within the Fifth Circuit. *Brown v. Astrue*, No. 11-2919, 2013 WL 620269 at 6* (E.D. La. Jan. 18, 2013). See *Foster v. Astrue*, 410 Fed. Appx. 831, 833 (5th Cir. 2011) (finding good cause to assign minimal value to a treating doctor's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination …").

Further, the medical statement was made in support of the prior January 27, 2023, medical conclusions of NP Ramos which themselves were not timely brought before the ALJ for review. Dkt. No. 7-1, p. 53. Molina argues that the cumulative opinions containing and referenced in the medical source statement "left a material inconsistency between the new treating opinions and the ALJ's RFC unresolved." Dkt. No. 11, p. 21. However, this argument alone is insufficient to prove the ALJ had no substantial evidence on which to base their decision as it does not account for the ALJ's proper reliance on the record as a whole.

### c. Medical Opinion of NP Ramos, including PT notes

The ALJ was unable to consider the January 27, 2023, medical opinion of Nurse Practitioner Ramos as the statements were authored after the ALJ submitted the administrative decision on September 28, 2022. Dkt. No. 7-1, pp. 13-16. However, this January 2023 submission included the post-decision treatment notes of physical therapist Cynthia Garcia. Those notes were previously used in Nurse Practitioner Ramos' evaluation of Molina's health throughout her treatments with him. Dkt. No. 7-1, pp. 17- 45. These physical therapy notes were also not taken up for full review by the Appeals Council.

Despite, the fact that the medical visits to Nurse Ramos came after the ALJ's decision, the timing alone is not dispositive of whether they relate to the period in question. This, because subsequent medical evidence may shed light on conditions that existed prior to the ALJ's decision. *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). However, there is no indication in the record that any treating professional, including Nurse Practitioner, used information in this period to arrive at any *new* conclusions of Molina's conditions, warranting review by the AC. Moreover, even if the records were considered by the ALJ or AC, they would not change the outcome of their determination. As previously noted, the new evidence does not "dilute the record to the point that the ALJ's ultimate finding is insufficiently supported." *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 282 (5th Cir. 2006). The treatment notes do not undercut or dilute the ALJ's findings in any significant way and are largely consistent with the ALJ's findings. This is especially true for the ALJ's findings of disability with respect to lumbar spinal injury, because the ALJ's lumbar disability determination is greater than that of the State agency consultants.

### d. Additional Records from Dr. Surya Raguthu

As to this material being considered by the ALJ, judicial review is "constrained by the record which was available to the ALJ." *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir. 1991). ALJ Kerber notes in the administrative decision that requests for additional information from Dr. Raguthu were made, but none were received. The ALJ decided sufficient evidence existed to make a determination without the requested evidence. Dkt. No. 7-1, p. 63. The additional treatment notes of Dr. Surya Raguthu submitted to the AC for the purpose of appellate review are duplicative of treatment notes already submitted to the ALJ for consideration. Dkt. No. 7-1, pp. 42-48; Dkt. No. 7-1 pp. 70, 610-618. Therefore, they are not viewed as "new" for the purposes of mandating review by the AC and were properly rejected. As this material was requested but already received, the Court finds no error with the decisions to reject AC review on the basis of this evidence.

The Court finds the AC considered all the newly submitted evidence and determined Molina had not met her burden to show a reasonable probability the evidence would change the outcome of the ALJ decision. 20 C.F.R. §404.970(a)(5) (2020); Dkt. No. 7-1, pp. 5-10.

The Court finds no error in the AC's determination to refuse to admit the supplemental evidence for full review, because Molina had not shown the evidence to be simultaneously (1) new, (2) material, (3) relating to the period on or before the ALJ's decision, and (4) reasonably probable to change the outcome of the ALJ's decision as required to grant AC review.

### VII. Recommendation

It is recommended that the petition for review of the denial of both Social Security Disability Insurance and Supplemental Security Income benefits filed by Ann Francis Molina be denied.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on February 14, 2024.

_____
Karen Betancourt.
United States Magistrate Judge